J. R. Swan, J.
I. Is the county ,of Clinton liable for the interest on the bonds, or must the bondholders look to the railroad company for payment. •
The second section of the act of March 1, 1851 (49 Local L. 514), provides as follows : “ The commissioners of said county, for the purpose of paying the stock subscribed under this act, are hereby authorized to borrow the necessary amount of money, for which they shall issue bonds or obligations of the county, in amounts not less than one hundred dollars, which bonds or obligations shall be made negotiable, bearing interest payable annually at such place within or without this state, and at such rate, not exceeding seven per centum per annum, as may be agreed upon; and such bonds or 283] obligations may *be made redeemable at such time as may be deemed expedient by said commissioners; or such bonds or obligations, Or any part thereof, may be issued directly to said company, in payment of said stock, as said company and said commissioners may agree; and all bonds and obligations issued and negotiated by said commissioners, and regular on the face thereof, shall, in the hands of said company, or of any bona fide holder thereof, be deemed and taken, in all courts, and elsewhere, as conclusive evidence of the regularity of everything required by this act to be done, preliminary to the issuing and negotiating such bonds or obligations; provided, however, that before any bonds shall be issued by said commissioners, as herein provided for, said commissioners and said *284 company shall agree in writing that said company shall pay all interest which may accrue on said bonds, and shall, in consideration thereof, be entitled to all the profits and dividends of the stock subscribed by said commissioners, until said bonds are redeemed by said commissioners.”
The proviso of this section relates as well to bonds issued directly to the railroad company in payment of the stock subscribed, as to bonds issued for the purpose of borrowing money to pay for the stock. The bonds, therefore, to whomsoever issued, were required to stipulate on their face for the payment of interest by the county. If it had been intended by the proviso that the bondholders should look alone to the railroad company for interest, the legislature would not have authorized the county to stipulate to pay the interest ; but instead of providing for an agreement, on the part of the railroad company with the county, to pay the interest, all provision for payment of interest by the county would have been omitted, and the statute would have required simply that the railroad company should agree with the bondholders, by indorsement on the *bonds or otherwise, to pay the interest to the bondholders. [284 The third section of the law shows still more clearly that the legislature intended, by the second section, that the county should be liable to the bondholders for the interest, and that the railroad company should be responsible to the county for its reimbursement. The third section is as follows :
“ The faith of the county, and the net profits of dividends upon the stock so-subscribed by the county, shall stand pledged for the payment of the indebtedness and interest which may become due from said county under this act; and it is, moreover, hereby made the duty of the commissioners and the auditor of said county, from and after the contracting of any indebtedness against said county, under this act, to add such per centum upon the tax duplicate of said county, annually, over and above the net profits and dividends aforesaid, to pay the accruing interest arising under this act, and also to provide a sinking fund of such amount as they may deem expedient; and the moneys so levied, when collected, shall be applied to the purpose aforesaid, and no other.”
As the second section contemplates no other mode of paying for the stock subscribed but by the issue of county bonds, either to the railroad company or to dealers in money, the interest required to *285, 286 be raised by the third section necessarily refers to the interest on the bonds.
But it is urged that inasmuch as the railroad company agree in writing to pay the interest on the bonds, and the bonds having been issued to it, the county was not liable to the railroad company for the interest, and the railroad company could transfer no better right than itself possessed.
It is undoubtedly true, that if the railroad company had retained 285] these bonds it could not have enforced the payment *of interest from the county; for if the company had sued the county for the interest, the agreement of the company with the county to pay the interest could have been set up by plea to defeat the action. And such plea would have been effectual for that purpose, not because the mutual agreements to pay the interest extinguished each other, but to prevent circuity of action. The same effect would have followed if the county had issued these bonds to a money dealer instead of the railroad company, and the latter had afterward purchased and held the bonds.
It would be very absurd for this court to assume that the railroad company was exchanging a subscription to their stock for these negotiable bonds with a view of retaining them for the benefit of the stockholders, and at the same time agreeing to. pay the county the interest which might thereafter accrue upon them. It is too manifest to admit of doubt, that the law, the subscription to the stock, the issuing of the bonds to the railroad company, and the authority given to the compiany by section 9 of the law of March 1, 1851, to sell the bonds at a discount, was to effect the single object of raising funds, whereby the company might be able to complete their road. The bonds were made negotiable for the same purpose. The county might have sold them, or they could be issued to the railroad company and sold by it. Any course of reasoning upon the construction of the statute, based on the supposition that the bonds, when issued to the railroad company, wore to be retained by it, would lead to a false interpretation of the statute. The fact, therefore, that if the company retained the bonds it could not enforce the payment of the interest, is supposing a state of things not contemplated by the parties, and can not defeat the real object and intention of the law and the parties, which was this: that the bonds 286] might be sold to *raise money to build the road. Hence the provisions that the bonds should be negotiable — should bear interest; *287 that the faith of the county was pledged for principal and interest; that it was made the duty of the county commissioners to assess-taxes, if necessary, to pay the interest as well as the principal.
We are of the opinion that the law intended that the bondholders-should look to the county for the interest; that she is primarily liable; and that the county has a right to look to the railroad company for reimbursement, the agreement of the company with the county to pay interest being collateral to the stipulation of the county with the bondholders upon the same subject.
II. Objection is made to warrants for the interest being attached to these bonds. The county commissioners were authorized to issue “negotiable bonds bearing interest payable annually.” The bonds stipulate for the payment of the principal “-on the first day of Janu'ary, in the year one thousand eight hundred and sixty-seven, with interest thereon at the rate of seven per centum per annum, payable on the presentation of the proper coupon therefor at said county treasury, on the first day of January next, in the first instance, and thereafter annually, on the first day of January in each and every year, until the payment of the principal sum, as aforesaid.” To the bonds are attached interest warrants for each year’s interest, thus:
“ Clinton county 7 per cent. loan. Interest warrant No. 4. The county of Clinton will pay to the Cincinnati, Wilmington and Zanesville Railroad Company, or bearer, at the treasury of said county, on the first day of January, 1856, seven dollars interest, due on that day on bond No. 8, for $100.
(Signed;) “Bebee Truesdell, Auditor G. G.”
The bond and the interest warrant are in the usual form. It *is for the convenience of the officers of the county and of [287 the bondholders, that interest warrants are attached to the bonds. The possession of the warrants is prima facie evidence that tho holder owns the bonds from which they are detached. The warrants are payable to bearer, and are negotiable by delivery, like an order of the county auditor upon the county treasurer.
III. The relator has made proferí of one of the bonds with couX>ons attached, past due, and has proved that he owns other coupons unpaid. There is no question made as to the genuineness of the coupons or their non-payment. Their possession by the relators is evidence of non-payment. The right of the relators to be paid, is fully established. A judgment on the coupons, in favor of each- *288 ■holder, for the purpose of establishing his claim seems to us unnecessary, and would, in cases of this kind, be attended with a formidable amount of costs against the coun.ty.
IY. It is claimed that proof should be made of demand of payment of the coupons before proceeding against the commissioners. It satisfactorily appears that no fund, no provision whatever, has been made for payment at the treasury of the county where the interest warrants are made payable. In such case, even upon a bill of exchange payable at a particular place, no demand is necessary. Conn v. Gano, 1 Ohio, 484.
Y. It is in general the duty of the commissioners of a county to ascertain, as near as maybe, the amount necessary to pay the debts of the county, and to make an assessment for that purpose.. And so in the case before us, it was the duty of the county commissioners to ascertain whether the railroad company would pay the interest, and if not, the county being primarily liable, the board of commissioners should have made provision therefor. The fact, 288] *at all events, could be ascertained in January; and after •default by the railroad company in January, it was the duty of the commissioners, clearly designated by the law, to make an assessment for the interest. The default and the duty exist as to the whole amount of the interest; it is single and entire; and the mandamus must issue accordingly.

Peremptory mandamus awarded.

Brinkerhoee, Bowen, and Scott, JJ., concurred.
Bartley, C. J., dissented.